We'll move to the final argument of the day. Jarnutowski against Kijakazi. Appeal number 21-2130, where we have Mr. Schultz and Ms. Jake. If we could hold just a second to see if Ms. Jake is joining us on video. Yes, there we go. Okay. Can you both thumbs up if you can see and hear us all right? Okay, thank you. All right, Mr. Schultz, go ahead for pleading. May it please the court, your honors. Barry Schultz on behalf of the appellant, Donna Jarnutowski. The key points supporting reversal of the ALJ's decision include the fact that the ALJ found Ms. Jarnutowski disabled from September 11, 2013 through January 19, 2016, pursuant to the medical vocational guidelines. For that time period, the ALJ found the plaintiff was limited to light work, that she could not perform her past work, and therefore, because of her age, 55 years old and older, she was disabled due to the medical vocational guidelines. The ALJ then found that a year, approximately a year after her final surgery on the right foot, the plaintiff's condition improved. And from that finding, the ALJ concluded that therefore, Ms. Jarnutowski could perform medium exertion work. The problem there is that there literally is not one piece of evidence in this record supporting a finding that the plaintiff could perform medium level work. Medium level work requires lifting up to 50 pounds and lifting 25 pounds frequently, which the commissioner defines as approximately six hours in an eight-hour workday. The commissioner has not explained to this court what evidence supports the ALJ's conclusion. The plaintiff testified that she was limited to lifting 10 pounds, that lifting and carrying items put additional pressure on her foot, that although she was more comfortable following her final surgery, which I think was either a fourth or fifth surgery on her foot, that she still was quite limited. Her daily activities confirm or affirm her limitations in that she went grocery shopping but did not carry the bag. She did laundry, but her husband had to carry the laundry basket. She vacuumed, but her husband had to bring the vacuum cleaner to her, and she stopped carrying her grandchildren once they reached 10 pounds because it was too heavy for her to lift them after that. The only medical opinion of record is that of Dr. Kalikian, who's the treating orthopedic surgeon who did some of the surgeries on the plaintiff's foot, as well as reviewed all of the x-rays of her foot. And he opined that she could lift 20 pounds occasionally, but less than 10 pounds frequently. And the state agency doctors in this case, contrary to most cases, did not give an opinion as to the plaintiff's functional capacity. So while the ALJ found the plaintiff not fully credible and rejected the treating doctor's no evidence on which the ALJ could rely to reach the conclusion that the plaintiff could lift 25 pounds for six hours and an eight-hour workday. The commissioner relies on the fact that the ALJ found improvement and found that the treatment records after the relevant date showed that the claimant could walk normally. But none of those treatment records show that she was lifting anything while she was walking. She walked at a doctor's office. As this court held in the Scott v. Astor case, the fact that a claimant could walk for 50 feet during a consultative evaluation doesn't allow for an inference that that person can stand and walk for six hours and an eight-hour workday. Here we have the fact that the claimant walked normally when just walking across the room certainly doesn't provide for a reasonable inference that that person could do so while lifting and carrying 25 pounds for hours during the day let alone for even once or across the room. Schultz, one of the points the government makes is a lack of treatment after this January 2016 visit. If I recall correctly there was a change in insurance but can you just elaborate a little more on your perspective about the post-January 2016 treatment evidence? Yes, Your Honor. Two things. First, the lack of treatment doesn't provide a basis for the ALJ to find how much the claimant can lift and carry while standing and walking. So even if she got no treatment given the fact that she has objective limitations, arthritis and significant parts of her foot, the ALJ can't just arbitrarily reach a conclusion. But in addition Dr. Kalikian had x-rays taken in July of 2016 which was after the date the ALJ found the improvement of medium level work and those x-rays still showed significant degenerative joint disease in various portions of the claimant's right foot. Dr. Kalikian then provided his opinion after having reviewed those x-rays and gave the limitations that he provided. But in addition the new doctor as you indicated the claimant had to see a new doctor, Dr. Deal at page 668 and also at page 680 when the claimant went to see that doctor he noted that she complained of chronic pain in the right foot as well as in her neck and shoulder. And again in November of 2017 she reported chronic pain in the foot even though she went to see him for other reasons. And as page 673 of the record the doctor assessed chronic pain in the right foot as part of his diagnosis. So the claimant she had already had multiple surgeries in her foot, she had a fusion, she had a plate in her foot and there may have been no more treatment that was available to her. But that doesn't again provide any basis to establish that she can lift and carry any specific weight. In the Briscoe-Exrell-Taylor versus Barnhart case this court held that social security ruling 96-8p mandates that an ALJ explain the specific factual basis for the residual functional capacity finding and failure to do that warrants remand. And again an ALJ may not arbitrarily go from finding a claimant had improvement to finding a specific amount that the claimant can lift unless there's some evidence in the record showing that the claimant is engaged in those activities or some opinion that the If I could interrupt for a second. Of course. If we agree with you that the denial was not supported by substantial evidence would the remedy be another hearing or award of benefits? Well an award of benefits would be an appropriate remedy in this case because since there's no evidence supporting a finding that the claimant can do medium work all the evidence supports that she's limited to light work or less than light work. Medical vocational guidelines require a finding of disability for the claimant continuing. Thank you your honors. If there are no other questions I'll reserve the rest of my time. Thank you. All right. Thank you very much. Ms. Jake for the government. Good morning. May it please the court. Tiffany Jake on behalf of the acting commissioner of social security. This is not a complex case. The ALJ found the claimant disabled for almost two and a half years during which time she could perform light work after recovering from her successful surgery in February 2015. The ALJ recently found she was no longer disabled as of January 2016. The claimant herself does not dispute that she could perform light work during the closed period. However this record amply supports significant medical improvement after her period of disability and with it an increased functional capacity. So for the time following the closed period which is the period at issue here the ALJ comprehensively evaluated that record evidence and reasonably determined that the claimant could perform medium work. That evidence included consistently normal findings. There was normal gait, normal strength, normal mobility, normal neurological findings. There are no there's no evidence of any deficits physical deficits whatsoever in this record following that closed period. The claimant has not pointing to any deficits and also there also aren't any complaints of functional limitation. Now she did mention in her first meeting with her new PCP Dr. Dio that she had chronic you know years of chronic pain but she mentioned you know multiple impairments not just her foot and she didn't give it in the sense of I am currently complaining about my foot pain. She was just indicating her history to her new physician. At that time she also mentioned to the physician that tramadol was effective in controlling that chronic pain and I'd also note at that first meeting he Dr. Dio did a comprehensive physical examination and found no deficits whatsoever. Now in addition to these normal findings we should also consider that the treating treating surgeon Dr. Kalikian he released her from his care with no restrictions afterwards and there was also no additional follow-up from any specialist or any other treatment for the foot or other relevant conditions after the end of that closed period. Miss Jake is it correct Mr. that Dr. Kalikian said activity is tolerated? He did say activity is tolerated which which I'm sorry. I'm just going to ask you what does that mean? Activity that she could tolerate and if you look at the record after that time she does not indicate any activity in the objective record that she could not tolerate. The only time she has indicated any deficits or problems tolerating activities is through this disability claims process. However it's reasonable to expect that the debilitating symptoms and limitations that she indicates she has that she's addressing to social security and the judge she should also be you know referring these claims to her treating physicians as well who are in a to treat these claims. The objective record has no evidence of these complaints of debilitating chronic limitation. It's just within her social security claim that she's indicating these limitations and even now her only evidence is her subjective reports. She says what she can do in the course of her disability claim but she can't point to any evidence in this objective record to support these claims. Miss Jake given the sequence of the closed period of disability found by the ALJ and then the the finding as to later periods do you agree that the burden of proof is on the commissioner on this question of her residual functional capacity? The burden for the ALJ the burden if any is to show that there was medical improvement from when she was disabled. And is it is it enough just to say some improvement or do we need some indication of degree? So medical improvement is defined as any decrease in the medical severity of an impairment that was present at the time of the last finding of disability. So according to the regulations it's just a decrease in the medical severity and the ALJ showed that there was a decrease but I also argue that the ALJ showed a significant increase not just a decrease in severity there is a significant increase in her ability to function following this period of disability. And after that time the burden always remains with the plaintiff with the claimant to show her disability to show her limitations and to show that she is disabled and unable to work. She has not done that here. She has not presented evidence to show that she is disabled or that the ALJ's limitations are not sufficient. So what's the best evidence that she is able to lift 25 pounds frequently and stand for up to six hours a day? Well I'll start with the standing. With regard to the standing as I said before the plaintiff herself does not dispute that she could perform light work. She agreed with the light work during the closed period of disability. So she herself has basically consented that she can stand and walk for six out of eight hours in a work day. As far as the lifting goes there is as I said before there is no evidence of any lifting limitation here. There's no evidence that she couldn't lift and I'd also like to point out even though there is some suggestion in the plaintiff's brief about you know some frailty and fragility here this person this claimant is not a stranger just to medium work. She performed medium work for years before this closed period and before her AOD. Well into her 50s she was performing medium work. There is no indication in this record that she is unable to perform that medium work. She and I'd also like to point out that she herself said her disability and her lifting ability were directly related to her foot impairment. She said this is the reason why she couldn't lift because her foot impairment. The ALJ showed and established and supported by the record that that foot impairment improved significantly following the closed period. It was therefore reasonable for the ALJ to conclude that her lifting ability which she said was tied into her foot impairment improved as well. So the ALJ considered all these factors and reasonably found that the claimant was no longer disabled after the closed period and reasonable minds could absolutely disagree on the weight given to this evidence. However because it's supported by substantial evidence the decision should be upheld. Substantial evidence is such relevant evidence that a reasonable mind might accept is adequate to support a decision. In that case in this case this evidence does support a medium functional capacity. The plaintiff has not shown otherwise. Could there have been another outcome based on this evidence? Perhaps. In fact I think arguably this record could have also been consistent with a step two denial after the closed period. But does the evidence compel a contrary outcome? Absolutely not and thus reasonable minds could disagree on the outcome of this case. Ms. Jake I want to make sure I didn't miss something based on what you just said given what I've read in the record. What's the distinction in the walking limitation between light and medium? I thought medium was the six to eight hour standard and I that that's the standard for light work too. Yes your honor. Both light and medium involve six hours of standing or walking in an eight hour work day. So the only difference relevant to Ms. Jarnotowsky in this case is the lifting? Yes that's the only distinction is the and the evidence shows that after her foot impairment improved that there was no limitation in her ability to lift. She did not complain of any lifting and there is no indication and her strength was consistently found to be full and normal in every examination that was performed and there were many examinations performed following this closed period by her PCP. So my time is getting short so I just want to conclude by saying that this entire case centers around the claimant's unsuccessful attempt to shift her burden to prove disability in this case. A claimant can't simply assert she's disabled and leave it at that. She has to provide evidence to show how her impairments rendered her unable to work during the time she alleges she was disabled. The claimant hasn't done that here. Instead she attempts to misdirect and nitpick the ALJ's decision in the hopes that the court won't notice that she has not met her burden. It's almost like a question with a question in this case. But because she has not met her burden and because the ALJ's decision is supported by substantial evidence, the court should affirm the ALJ's decision. So if there are no further questions, the Commissioner rests on the brief and asks that you affirm the district court decision. Can I just, maybe you can help me out on this question of burden of proof. I thought this was clear but maybe it's not. Could you address plaintiff's authority for putting the burden on the Commissioner in essence to show sufficient improvement after a period of disability? Well actually the plaintiff maintains the burden throughout. It's really only until step five where the burden shifts to the Commissioner to prove that there are other jobs that the plaintiff could perform in the national economy. But until that time, the plaintiff itself maintains the burden to prove their disability and their limitations. Okay, thank you. Thank you. All right, Mr. Schultz, rebuttal? Yes, Your Honor. Mr. Schultz, before you begin, can you address the distinction between the exertional requirements that are important to Ms. John-Utowski between light and medium? You heard my discussion with Ms. Jakes. Jake, is it just the lifting? Well, it's a little more complex than that. Light work can, if a job requires standing and walking for six hours, it is a light job. But jobs can be at the light exertional level if they require sitting but significant use of the arms and legs also. But the lifting is the clearest distinction where medium work requires lifting 25 pounds for six hours a day. Light work, 10 hours for six hours a day and 20 pounds occasionally. So that is the clearest distinction in this case. You know, the Commissioner keeps saying that the plaintiff hasn't proven her case. But as this court held in, again, the Scott v. Astrum case, all a claimant can do is testify as to their limitation, submit evidence that they have medically determinable impairments that can cause symptoms, can submit an opinion from a treating physician as to what their limitations are. And Ms. John-Utowski did all of that. And the opinion is from a treating orthopedic surgeon. In addition, of course, the most recent x-rays show that she has degenerative arthritis in multiple places in her right foot, plus a plate and screws in her right foot. So how does the ALJ go from saying she improved to saying, therefore, she can lift and carry 25 pounds when she still has this objective finding reviewed by her orthopedic surgeon as to what her condition is? What's your answer to the Commissioner's position that Ms. John-Utowski doesn't complain of deficiencies to doctors after the surgery, only to the Commission? Well, people, Your Honor, people don't go to their doctors usually complaining about how much they can lift. There would be no reason for her to go to her doctor and say, you know, I can't lift 25 pounds anymore. I mean, she had been living with this condition for five, six years at that point. She had had multiple surgeries on her foot. It was better. She was more comfortable, but there'd be no reason. She wasn't planning on going back to work after being off work for six years. There was no reason for her to go to the doctor and say, I can't carry 25 pounds around for six hours. The way the system is set up is she testified as to what her limits are. Often we don't go to our doctors and say what our limits are. We say I have pain, my foot hurts when I stand, but you don't say I can only lift five pounds or I can't walk for three hours with a certain amount of weight. That's not reasonable and it's not what the evidence as to what that the claimant could lift anymore after her last surgery than prior to her last surgery. Absolutely none. Thank you, your honors. All right. Case is taken under advisement. Our thanks to both counsel. That concludes today's cases and the court will stand in recess.